UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
METRO-GOLDWYN-MAYER STUDIOS INC.,                :

                         Plaintiff,                           :

                                                     07 Civ. 2918 (DAB)
       -against-                                    :
                                                       (ECF Case)

TPS GESTION, S.A., TPS SOCIÉTÉ EN NOM     :
COLLECTIF, CANAL+ FRANCE S.A., and
GROUPE CANAL+ S.A.,                                         :

                         Defendants.                      :
------------------------------------------------------------------x

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

MANATT PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.   MGM ERRS IN ASSERTING THAT THERE IS PERSONAL
     JURISDICTION OVER THE NON-SIGNATORY DEFENDANTS .............................. 1

     A.   The Non-Signatory Defendants Are Not Subject
          To Jurisdiction In New York. ................................................................................ 1
     B.   This Court Has Ruled That MGM Is Not Entitled
          To Jurisdictional Discovery. .................................................................................. 3

II   MGM ERRS IN ASSERTING THAT THE COMPLAINT STATES A
     CLAIM FOR BREACH OF CONTRACT ....................................................................... 5

     A.   There Is No Breach Of Contract Claim As A
          Matter Of Law ........................................................................................................ 5
     B.   Plaintiffs Are Not Entitled To Specific Performance
          As A Matter Of Law. .............................................................................................. 9

III  MGM ERRS IN ASSERTING THAT THE COMPLAINT STATES A
     CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ................................ 9

TABLE OF AUTHORITIES

Page

Cases

Banco Popular De Puerto Rico v. Airborne Group Plc.,
    882 F. Supp. 1212 (D.Puerto Rico 1995) ................................................................. 2

Bell Atlantic Corp. v. Twombly,
    127 S. Ct 1955 (U.S. 2007) ............................................................................. 5, 6, 10

Best Van Lines, Inc. v. Walker,
    490 F.3d 239 (2d Cir. 2007) ...................................................................................... 4

Cargo Partner AG v. Albatrans, Inc.,
    352 F.3d 41 (2d Cir. 2003) ........................................................................................ 7

Conley v. Gibson,
    355 U.S. 41 (1957) ................................................................................................ 5, 6

Cornell v. Assicurazioni Generali S.p.A.,
    No. 97 Civ. 2262, 2000 U.S. Dist. LEXIS 2922 (S.D.N.Y. Mar. 16, 2000) ............. 5

Direct Mail Production Srvcs. Ltd.,
    No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945 (S.D.N.Y. Sept. 6, 2000) ....... 2, 4

Jazini v. Nissan Motor Corp.,
    148 F.3d 181 (2d Cir. 1998) .................................................................................. 4, 5

Masefield AG v. Colonial Oil Industries,
    No. 05 Civ. 2231, 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ............................. 10

Network Enterprises, Inc. v. APBA Offshore Productions, Inc.,
    No. 01 Civ. 11765, 2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. Sept. 12, 2002) ........ 6

Novak v. Tucows, Inc.,
    No. 06 Civ. 1909, 2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007) .......... 2

Old Republic Ins. Co. v. Hansa World Cargo Service,
    170 F.R.D. 361 (S.D.N.Y. 1997) .............................................................................. 7

Patel v. Patel,
    No. 06 Civ. 6378, 2007 WL 2193778 (E.D.N.Y. July 14, 2007) ............................. 4

Russo v. Banc of America Securities, LLC,
    No. 05 Civ. 2922, 2007 WL 1946541 (S.D.N.Y. June 28, 2007) ............................ 9

Somin v. Total Cmty. Mgmt. Corp.,
    No. 06 Civ. 6004, 2007 U.S. Dist. LEXIS 47514 (E.D.N.Y. June 26, 2007) ........... 6

Triple Z Postal Services, Inc. v. United Parcel Service, Inc.,
    13 Misc.3d 1241(A), 831 N.Y.S.2d 357 (N.Y. County 2006) .............................. 2, 8

Weingrad v. Telepathy, Inc.,
    No. 05 Civ. 2024, 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 3, 2005) ............ 2

Williams v. Berkshire Fin. Group, Inc.,
    No. 06 Civ. 5043, 2007 U.S. Dist. LEXIS 42482 (E.D.N.Y. June 12, 2007) ........... 6

## TABLE OF AUTHORITIES

Page

<u>Yung v. Lee</u>,
   No. 00 Civ. 3965, 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002), <u>aff'd</u>, 160
   Fed. Appx. 37 (2d Cir. 2005) ................................................................................................. 1

Statutes

CPLR 301 ............................................................................................................................... 3
CPLR 302 ............................................................................................................................... 3

Rules

Fed. R. Civ. P. 4(k) ................................................................................................................. 3
Fed. R. Civ. P. 11 ................................................................................................................... 4
Fed. R. Civ. P. 12(b)(2) .......................................................................................................... 1
Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 6, 10

Defendants submit this reply memorandum and affirmation of Lauren Reiter Brody in further support of their motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P., and in response to MGM's papers.[1]

As set forth below, MGM cannot refute defendants' showing that (i) there is no personal jurisdiction over the Non-Signatory Defendants; and (ii) the breach of contract and tortious interference claims should be dismissed. Accordingly, the complaint -- which is undermined by its own allegations and documents and premised upon untenable legal theories -- should be dismissed with prejudice.[2]

I
## MGM ERRS IN ASSERTING THAT THERE IS PERSONAL JURISDICTION OVER THE NON-SIGNATORY DEFENDANTS

The Non-Signatory Defendants are not bound by the forum selection clause in the Agreement nor are they subject to jurisdiction in New York (Def. Mem. 9-15). MGM argues both that there are grounds for jurisdiction and that it needs discovery to ascertain if there are any such grounds. The first argument is incorrect, and the second has already been rejected by this Court.

A.  The Non-Signatory Defendants Are Not Subject To Jurisdiction In New York.

MGM has not alleged any basis for subjecting the Non-Signatory Defendants, which are French companies operating in France and protected by French law, to jurisdiction in New York.

1.  The Non-Signatory Defendants are not bound by the forum selection clause. -- As this and numerous other Courts have recognized, a forum selection clause does not bind a defendant who is not a party to the contract. See, e.g., Yung, 2002 WL 31008970 (Def. Mem.

---

[1] MGM's papers include a declaration of its senior counsel ("Donjacour Decl."). The declaration should be disregarded because it attests to matters of which the declarant has no personal knowledge, and attaches untranslated French documents.

[2] Although the allegations of the complaint are accepted for purposes of this motion, they do not accurately state the facts.

10). This is axiomatic and in accordance with the rule that contracts cannot be enforced against non-parties (Def. Mem. 16).

MGM strains to avoid established law with cases in which a forum selection clause was enforced by defendants against a plaintiff who had agreed to it, but subsequently brought a lawsuit in a different forum. See, e.g., Novak, 2007 U.S. Dist. LEXIS 21269 (Pl. Mem. 6) (holding that "[p]laintiffs cannot escape their contractual obligations simply by joining parties who did not sign the contract and then claiming that the forum selection clause does not apply"); Weingrad, 2005 U.S. Dist. LEXIS 26952 (Pl. Mem. 6) (same); Banco Popular De Puerto Rico, 882 F. Supp. 1212 (Pl. Mem. 7) (same). The result in these cases was to dismiss the action for improper venue.

Here, by contrast, plaintiff MGM would use the forum selection clause to acquire jurisdiction over defendants that are not parties to the Agreement. In other words, this is not a case where a defendant seeks to hold a plaintiff to its contractual choice of forum. Nor is this a case where there is merely a question as to whether the action is properly venued. The issue is whether French companies are subject to jurisdiction in New York by virtue of a forum selection clause to which they did not agree. Plainly, they are not, and MGM's own case recognizes as much. See Triple Z Postal Srvcs., Inc., 13 Misc.3d 1241A, *10 (Pl. Mem. 7) (noting the "general rule that a non-party to an agreement may not be subject to a forum selection clause").

Furthermore, even when defendants invoke the forum selection clause (which is not the situation here), there must be a showing that they are "sufficiently closely related [to the signatory] such that it was foreseeable that they would be bound". Direct Mail Production Srvcs. Ltd., 2000 Dist. LEXIS 12945 at **13-14 (Pl. Mem. 6). The Agreement was entered into in 1996. At that time, Group Canal+ was a competitor of TPS SNC; Canal+ France did not exist; and TPS Gestion had no ownership interest in TPS SNC (Def. Mem. 11; see also Donjacour

2

Decl. Ex. 2, p. 1). MGM admits all of this, but argues "[f]orseeability is not a chronological issue" (Pl. Mem. 7). Merely to state the argument is to reveal its absurdity. Black's Law Dictionary defines foreseeability as the "quality of being reasonably anticipatable". The complaint does not allege any reason to find that a competitor, an entity not yet registered, and one unaligned with the signatory could conceivably anticipate being bound by the Agreement.

    2.   <u>The Non-Signatory Defendants are subject to, and protected by, French law</u>. -- The French Civil Code provides for a privilege of jurisdiction over its citizens, which would be offended if the Non-Signatory Defendants were forced to defend themselves in a court to which they did not submit (Def. Mem. 15). MGM concedes this point.

B.   <u>This Court Has Ruled That MGM Is Not Entitled To Jurisdictional Discovery</u>.

    Rule 4(k), Fed. R. Civ. P., instructs federal courts to examine state law to determine whether there is personal jurisdiction over a foreign defendant. The Non-Signatory Defendants are not subject to jurisdiction under CPLR 301 (a continuous presence in New York) or CPLR 302 (the acts giving rise to the claim occurred in New York). Def. Mem. 12-15. The complaint alleges that the Non-Signatory Defendants are French companies doing business in France (Compl. ¶¶ 11, 12, 13, 16), and that the acts underlying the claims occurred in France (Compl. ¶¶ 58-59). The lack of New York contacts is confirmed in sworn declarations. <u>See</u> Meaudre, Meheut Decls.

    MGM offers no response whatsoever to this showing. Instead, it seeks permission "to take discovery into Groupe Canal+'s New York contacts" in an effort to concoct a basis for jurisdiction (Pl. Mem. 13). MGM omits to mention, however, that MGM has already applied for, and this Court has <u>denied,</u> such discovery. <u>See</u> Brody R. Affirm. Exs. 2, 3, 4.

    Even if this Court were to revisit its prior decision (and it should not), MGM's second request for discovery -- like its first -- must be denied because it is based on a misreading of the law. MGM asserts that "a 'prima facie case' for jurisdiction has not been required" to obtain

3

discovery (Pl. Mem. 10). MGM is wrong, and the Second Circuit has consistently refused to compel a foreign defendant to expend financial and other resources when the plaintiff has not alleged a prima facie case of jurisdiction. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); Jazini v. Nissan Motor Corp., 148 F.3d 181, 184 (Pl. Mem. 10) ("Our cases show that prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction").[3] See also Direct Mail Production Srvcs. Ltd., 2000 Dist. LEXIS 12945 (Pl. Mem. 6). The complaint alleges no facts whatsoever that would give rise to a prima facie case, and MGM does not claim that it does.

MGM now offers an attorney declaration in an attempt to remedy the lack of jurisdictional allegations in its complaint. However, the declaration simply rehashes the same meritless arguments rejected on MGM's prior application. Brody R. Affirm. Exs. 2, 3. Thus, MGM argues that Group Canal+ might be subject to jurisdiction based upon the activities of a subsidiary, Studio Canal (Pl. Mem. 12).[4] What MGM fails to appreciate is that, "[T]he presence of the subsidiary alone does not establish the parent's presence in the state." Jazini, 148 F.3d at 184. Rather, there must be a showing that "the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities". Id. at 184-85. MGM does not begin to meet this standard. All it claims is that there are

---

[3] MGM inexplicably states that these Second Circuit cases "do not create a categorical rule that a plaintiff must make out a prima facie case of jurisdiction" (Pl. Mem. 10, n.7). This is precisely what they do.

[4] MGM also claims that an entity called Canal+, which is not a defendant, had produced or co-produced a handful of films that used New York as a shooting location more than four years ago and had broadcast NBA games more than two years ago (Donjacour Decl. ¶¶ 8-9). These past sporadic activities do not establish a continuous presence in New York under CPLR 301. See Patel v. Patel, 2007 WL 2193778 at *5 (E.D.N.Y. July 14, 2007) (dismissing complaint because "New York law requires that the defendant be present in New York not occasionally or casually, but with a fair measure of permanence and continuity").

consolidated financial statements and some common personnel and businesses. These are characteristics of any ordinary parent-subsidiary relationship, and are wholly insufficient to create jurisdiction over the foreign parent. See Cornell v. Assicurazioni Generali S.p.A., 2000 U.S. Dist. LEXIS 2922 at *12-17, 30 (S.D.N.Y. Mar. 16, 2000) (granting motion to dismiss and denying motion for jurisdictional discovery because links between the parent and subsidiary including common ownership, soliciting investments in the forum, having seven directors in common, and the existence of consolidated financial reports were insufficient to establish that subsidiary was an agency or mere department of parent).

## II
## MGM ERRS IN ASSERTING THAT THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

The complaint does not state a claim for breach of contract and MGM is not entitled to specific performance (Def. Mem. 15-22). MGM's response is unavailing, and confirms the legal deficiencies of the claim.

A.   There Is No Breach Of Contract Claim As A Matter Of Law.

The Supreme Court has recently tightened pleading standards, rejecting language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of the claim. Bell Atlantic, 127 S. Ct 1955, 1969 (Def. Mem. 9) ("We could go on, but there is no need to pile up further citations to show that Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough . . . this famous observation has earned its retirement"). MGM relegates Bell Atlantic to a footnote, arguing that it "has not materially increased the pleading standards of the Federal Rules of Civil Procedure or the burden that must be borne by the opponent of a motion to dismiss under Rule 12(b)(6)" (Pl. Mem. 13, n.9). Regardless of MGM's characterization, the fact of the matter is that Courts in the Second Circuit require dismissal when a complaint relies upon "labels and conclusions, and a

formulaic recitation of the elements of a cause of action" and lacks factual allegations that "raise a right to relief above the speculative level" (Bell Atlantic, 127 S. Ct. at 1965). See, e.g., Somin v. Total Cmty. Mgmt. Corp., 2007 U.S. Dist. LEXIS 47514 (E.D.N.Y. June 26, 2007); Williams v. Berkshire Fin. Group, Inc., 2007 U.S. Dist. LEXIS 42482 (E.D.N.Y. June 12, 2007). MGM's complaint does not satisfy the Bell Atlantic standard.

1. <u>The claim should be dismissed as against TPS Gestion and Canal+ France</u>. -- First, a breach of contract claim <u>cannot</u> be maintained against TPS Gestion or Canal+ France because they are not parties to the Agreement (Def. Mem. 16).[5] MGM asserts that "either TPS Gestion or Canal+ France appear to be successors to the rights and obligations of TPS SNC" (Pl. Mem. 8). These are precisely the kind of allegations that the Courts have dismissed as insufficient. See, e.g., Network Enterprises, Inc. v. APBA Offshore Productions, Inc., 2002 U.S. Dist. LEXIS 17256, at *22-23 (S.D.N.Y. Sept. 12, 2002) ("The imposition of successor liability, as with corporate veil piercing, requires the allegation and proof of specific facts, none of which have been alleged in the . . . Complaint").

Under New York law, "the rule [is] that an asset purchaser is <u>not</u> liable for the seller's debts". Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (emphasis added).[6] MGM would evade this rule by speculating that "there has apparently been a *de facto* merger, under which Canal+ France and/or TPS Gestion are now performing and are bound by TPS SNC's contractual obligations" (Pl. Mem. 9). However,

> to find that a de facto merger has occurred there must be (1) a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; (2) a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; (3) a dissolution of the selling corporation; and (4) the assumption of liabilities by the purchaser.

---

[5] MGM has not asserted a breach of contract claim against Groupe Canal+.

[6] When a purchaser acquires a seller's capital stock (as occurred here), "the purchaser does not become liable for the seller's debts unless the stringent requirements for piercing the corporate veil are met". Id. at 45. MGM does not meet this standard. Instead, it relies on successor liability which applies only to an asset purchase and is unavailing for the other reasons discussed herein.

6

Cargo Partner AG, 352 F.3d at 46. The complaint does not allege these elements. MGM does not claim that TPS SNC was dissolved. Compl. ¶ 11 (alleging that TPS SNC is "an unlimited liability business entity organized under the laws of France"); Pl. Mem 9 (positing that TPS SNC "still exists"). MGM does not contend that the management of TPS SNC remained the same. Pl. Mem. 4 ("Groupe Canal+ assumed all or significant control over TPS SNC or its major assets" and that "a Groupe Canal+ employee took over primary management responsibility at TPS [SNC] in September 2006"). Finally, MGM asserts that defendants "tr[ied] to frustrate MGM's contract rights", which is inconsistent with an intention to assume liabilities thereunder (Pl. Mem. 5).

Thus, as MGM's cited case holds, successor liability has not been alleged. See Old Republic Ins. Co., 170 F.R.D. 361, 376 (Pl. Mem. 14) (dismissing claims against alleged successors because plaintiff "makes no attempt to demonstrate that any . . . defendant is, in fact, a successor corporation to a previously existing entity. Simply pleading such a legal conclusion is insufficient to stave off dismissal, even under Rule 8(a)").

2. The claim should be dismissed as against TPS SNC. -- MGM's claim against TPS SNC is also fatally defective. The plain language of the Amendment provides a right to extend the term of the Agreement "in the event (and only in such event) of a Merger, consolidation or reorganization between TPS and Canal+ which results in a unified holding, whether direct or indirect, in the hands of a single entity or group of shareholders, of the Premium Pay TV Service of Canal+ . . . and the Premium Pay TV Service of TPS SNC" (Compl. Ex. 2, § I.2; Def. Mem. 15-19). MGM does not contest that this is an express condition precedent which must be performed literally. Furthermore, MGM admits that there was no transfer of shares, and the merger was not consummated, until 2007 -- after expiration of the Agreement. Compl. ¶¶ 58-59; Pl. Mem. 21 ("TPS SNC and Groupe Canal+ . . . in fact did not formally consummate the

7

transfer of TPS SNC stock until January 4, 2007). This is the end of the analysis, and there is no breach of the Agreement.

MGM attempts to cloud the matter by excising from the express condition precedent the phrase "unified holding, whether direct or indirect, in the hands of a single entity or group of shareholders, of the Premium Pay TV Service of Canal+ . . . and the Premium Pay TV Service of TPS SNC". Thus, MGM expounds on the "capitalized term 'Merger'" (Pl. Mem. 15) -- without reference to the restrictive clause that follows, which triggers the option to extend <u>only</u> if there is a unified holding "in a single entity or group of shareholders" of the premium pay television services. MGM's case, <u>Triple Z Postal Srvcs., Inc.</u>, 13 Misc.3d 1241A, *6 (Pl. Mem. 7), recognizes that, pursuant to the principle of contract construction known as *inclusion unius est exclusion alterius*, an agreement must be construed in "such a way as to avoid leaving a contractual clause meaningless". MGM's interpretation of the Agreement violates this basic tenet.

It is clear what is going on here. MGM would like to revert to the broader option it had before the Amendment wherein the transfer of "control" in an unconsummated merger was enough to trigger the option (Pl. Mem. 15-17).[7] MGM does not even mention Section V.4 of the Amendment, which provides that where the Agreement has been amended, the Amendment "prevails" (Compl. Ex. 2 § V.4). The extension provisions were amended, and thus, the Amendment prevails (<u>id</u>. § 2). Indeed, the Amendment is materially different from the Agreement in that, among other things, it calls for a unified holding with respect to specifically named channels of "Premier Pay TV Service[s]" whereas the Agreement focused on the transfer of control of any generic "digital television distribution platform", <u>e.g.</u>, a satellite or cable

---

[7]  The Agreement provided several ways for the term to be extended through December 31, 2006 (Compl. Ex. 1: Annex A § 9). A merger was but one of these ways. By the Amendment, the parties elected to extend the term by agreement (Compl. Ex. 2 § I.1), rendering all of Section 9, including 9(c)'s merger option, a nullity. The parties then reached a new -- and different -- understanding for an "additional" extension of the term through 2011 (Compl. Ex. 2 § 2).

system. Compare Compl. Ex. 2 § 4 with Ex. 1: Annex A § 9(c). The complaint fails to allege such a unified holding.

In a last-ditch effort to salvage its claim, MGM asserts that TPS SNC breached "an implied contractual duty of fair dealing and good faith not to do anything that would prevent MGM from exercising its option rights" (Pl. Mem. 20). This claim is not even alleged in the complaint. Moreover, it is not wrongful -- let alone "frustration" or "prevention" of contract as MGM erroneously labels it (Pl. Mem. 20) -- for TPS SNC to merge at a time of its choosing since it had no obligation to MGM to merge at all. See Russo v. Banc of America Securities, LLC, 05 Civ. 2922, 2007 WL 1946541 at *6 (S.D.N.Y. June 28, 2007) (Batts, J.) (dismissing claim because "[t]he implied covenant does not operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits").

B.  Plaintiffs Are Not Entitled To Specific Performance As A Matter Of Law.

MGM's demand for specific performance is not viable because there is an adequate remedy at law (as evidenced by its demand for money damages), and it is barred by laches (as evidenced by its inexcusable delay in seeking equitable relief where there are wasting assets) (Def. Mem 19-22). MGM does not refute these points, and its response is that they should not be addressed on a motion to dismiss. However, the Supreme Court has instructed that a complaint's "basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court". Bell Atlantic, 127 S. Ct at 1966. The demand for specific performance should be dismissed.

III
MGM ERRS IN ASSERTING THAT THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

The tortious interference with contract claim against Group Canal + is entirely "upon information and belief" and does not state a claim. The claim is negated by the allegations in the

9

complaint because Group Canal+ acted in its own economic interest (Def. Mem. 22-25). A "desire for economic profit" cannot sustain a claim for tortious interference. <u>Masefield</u>, 2006 WL 346178 at *6 (Def. Mem. 23).

MGM does not offer any additional information, and falls back upon its mantra that "the issue of economic interest is not appropriate for a decision on a motion to dismiss" (Pl. Mem. 24). This is incorrect as MGM well knows since its attorneys recently obtained dismissal of a tortious interference claim by asserting an economic interest defense on a Rule 12(b)(6) motion. <u>See</u> <u>Masefield</u>, 2006 WL 346178 at *5 ("The crucial inquiry, then is whether this alleged interference was without reasonable justification or put differently, was improper"). Nor can MGM retreat from its own allegations and claim that Group Canal+ was a "mere competitor" in 2006, when the tortious acts allegedly occurred (Pl. Mem. 23). MGM contends that TPS SNC and CANALSAT were competitors for years (including in 1996 when the Agreement was signed), but that in 2006, "Groupe Canal+ assumed all or significant control over TPS SNC or its major assets" and that it wanted to use such control to pressure "U.S. movie studios to accept shorter and less lucrative contracts" (Pl. Mem. 4, 5). Not only is there no such economic pressure because the French Ministry required "certain undertakings" in this regard (Donjacour Decl. Ex. 1, p. 10), but this does not constitute tortious interference as a matter of law (Def. Mem. 23-24).[8]

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Lauren Reiter Brody

---

[8] Economic pressure also does not constitute malice or provide a basis for punitive damages (Def. Mem. 23-24).